UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Demetrious A. Frett,                   Case No. 1:14-cv-0768

       Petitioner

v.                                           MEMORANDUM OPINION
                                                 AND ORDER

Christopher LaRose,

       Respondent

*Pro se* Petitioner Demetrious A. Frett filed the above-captioned Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Frett is currently incarcerated in the Trumbull Correctional Institution, having pled guilty in the Cuyahoga County Court of Common Pleas on September 6, 2011, to two counts of rape and two counts of abduction. He asserts four grounds for relief in his habeas petition: (1) the trial court committed a *per se* violation of Ohio Crim. Rule 11(E)(1) because it lacked subject matter jurisdiction to direct a plea bargain; (2) the trial court failed to comply with the order of the court of appeals by issuing a *nunc pro tunc* order with his new sentence; (3) he was "deprived of his actual innocence and Fourteenth Amendment of his Due Process rights;" and (4) his conviction is void because the trial court lacked subject matter jurisdiction. For the reasons set forth below, the Petition is denied and this action is dismissed.

Petitioner also filed an Application to Proceed *In Forma Pauperis*. That Application is granted.

## BACKGROUND AND HISTORY

Petitioner pleaded guilty in Cuyahoga County Court of Common Pleas Case No. CR-552762, to one count of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) with the sexually violent predator specification deleted and, in Case No. CR-544745, to two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and two counts of abduction in violation of Ohio Rev. Code § 2905.02(A)(2) with sexual motivation specifications pursuant to Ohio Rev. Code § 2941.147. *State v. Frett*, No. 97538, 2012 WL 3040117, at *1 (Ohio App. 8 Dist. July 26, 2012). The former case involved a victim under the age of 13 who ultimately gave birth to Petitioner's child when the victim was 14 years old. *Id.* The latter case involved two minors under the age of 13 during the entire period alleged in the indictment. *Id.* All three girls were living in Petitioner's household when the sexual assaults occurred between April 10, 2006 and December 13, 2010. *Id.* Pursuant to the terms of the plea deal, the state nolled the remaining 35 counts of rape, attempted rape, kidnapping, abduction, domestic violence, endangering children, and obstruction of justice in a third case, No. CR-543131. *Id.* The trial court merged the abduction counts with the corresponding rape counts as allied offenses prior to sentencing Petitioner to 11 years on each rape count, to be served consecutively. *Id.*

### A. DIRECT APPEAL

Petitioner timely appealed his conviction, raising five assignments of error. *Id.* In his first assignment of error, he claimed that the trial court erred in denying his oral motion on the morning of trial to replace his appointed counsel. *Id.* He pled guilty after the court denied his oral motion for the appointment of new counsel but prior to beginning the *voir dire* of the jury. *Id.* The Court of Appeals overruled this assignment of error, finding that when he pled guilty to the charges, Petitioner waived any error with respect to the trial court's denial of new counsel. *Id.* at *1-2.

Petitioner's second and third assignments of error asserted his guilty plea was not knowingly, voluntarily, or intelligently made. *Id.* at *3. He claimed that the trial court, prosecutor, and his attorney conspired to induce him to accept an unfavorable plea deal based on their collective recitation of the law pertaining to the case. *Id.* He also alleged that because the indictment vaguely established the range of dates of the offenses for two of the three victims, he was unaware of the exact dates for which the state alleged the illegal conduct occurred. *Id.*

The Court of Appeals overruled these assignments of error. *Id.* They found that during the plea colloquy, the trial court detailed Petitioner's rights to a jury trial, to be represented by counsel, to cross-examine the state's witnesses at trial, and to subpoena witnesses to testify on his behalf. *Id.* He acknowledged that the state had to prove his guilt beyond a reasonable doubt and that by pleading guilty, he was admitting to the facts of the indictment and providing a complete admission of guilt to the crimes as charged. *Id.* at *3-4. The trial court also notified Petitioner that his guilty plea waived the right to a trial and would allow the court to proceed to sentencing. *Id.* The trial court then stated the potential penalties for the crimes to which Petitioner was pleading guilty, and Petitioner acknowledged the penalties and that the plea was not the result of other promises, threats, or inducements. *Id.* Finally, the trial court explained the potential for the sentences to be served consecutively. *Id.* The Court of Appeals concluded that the trial court conducted a thorough plea colloquy during which Petitioner acknowledged his rights and understanding of the ramifications of the guilty plea. *Id.*

In addition, the Court Appeals addressed Petitioner's claim that the trial court scared him into accepting the plea deal, despite the thorough colloquy, when it also recited the potential penalties he faced if convicted on all 40 counts in all three cases. *Id.* at 4. The Court of Appeals determined that the trial court did not misstate any of the potential sentences for the crimes as indicted, and noted that Petitioner confirmed during the plea colloquy that no one, including the

3

prosecutor, his attorney, or the trial court, made any promises, threats, or other inducements to get him to change his plea. *Id.* As to his claims that the vagueness of the dates of the offenses in the indictment meant his plea was involuntarily entered, the Court of Appeals determined that by pleading guilty, Petitioner waived any defect in the indictment or bill of particulars regarding the vagueness of the range of dates. *Id.*

In his fifth assignment of error, Petitioner claimed that his attorney was ineffective for failing to recognize the inconsistency in his guilty plea to raping a child under the age of 13 when, the victim gave birth to his child when she was 14 years old and that the date range for the indictment included 10 days when the victim was older than the age of 13. *Id.* at *2. Petitioner also claimed his attorney failed to question Petitioner's competency to commit a crime in light of his bipolar disorder. *Id.* The Court of Appeals found this assignment of error to be without merit and overruled it as well. *Id.*

Petitioner's last assignment of error challenged the trial court's inadvertent imposition of a sentence pursuant to the version of Ohio Rev. Code § 2929.14 effective after the date of Petitioner's offenses. *Id.* at *5. The felony sentencing statute, Ohio Rev. Code § 2929.14, was amended effective September 30, 2011, and Petitioner's crimes were committed by December 2010. *Id.* The amendment in pertinent part increased the maximum sentence for a felony of the first degree to 11 years. *Id.* The amendment only applies to a person who commits an offense specified or penalized on or after the effective date of the amendment. *Id.* Prior to the amendment, and at the time Petitioner committed the offenses, the maximum term of prison was 10 years. *Id.* The state conceded the sentencing error and acknowledged that Petitioner should have been sentenced under the prior version of R.C. 2929.14(A)(1). *Id.* The Court of Appeals determined from the record that the trial court intended to impose the maximum penalty on each of the three rape counts, with the terms running consecutive to each other and stated, "[w]e accordingly modify Frett's sentence to be

4

consistent with the maximum sentence allowed under the version of R.C. 2929.14 effective on the date of his offense. His sentence is reduced to 10 years on each rape count, to be served consecutively." *Id.* at * 5. To that extent, his fourth assignment of error was sustained.

The Court of Appeals affirmed Petitioner's conviction, modified his sentence, and "remand[ed] the matter to the trial court for the sole purpose of correcting the sentencing entry to comport with our decision herein." *Id.* That decision was rendered on July 26, 2012. The trial court issued a *nunc pro tunc* order on October 3, 2012, correcting the sentencing entry as dictated by the Eighth District Court of Appeals.

### B. APPEAL TO OHIO SUPREME COURT

Petitioner did not file a timely appeal of this decision to the Ohio Supreme Court. Instead, he filed a Motion for Delayed Appeal nearly a year later on July 19, 2013. He claimed that his appellate counsel did not let him know the Court of Appeals had rendered a decision. He indicated if granted leave to proceed, he would assert that: (1) the Complaint did not contain signatures from the victims and was not valid; (2) the trial court told him if he pled guilty he could be sentenced within the range of probation to 40 years incarceration and then did not give him probation; (3) the trial court refused to appoint new counsel; (4) he was in jail at the time one of the crimes was alleged to have been committed but his attorney did not raise an alibi defense and indicated he could not make the argument in good faith; and (5) there was no evidence of his guilt since there were no rape kits submitted to the court. The Supreme Court denied the Motion on September 25, 2013.

### C. MANDAMUS ACTION IN COURT OF APPEALS

While pursuing his delayed appeal in the Ohio Supreme Court, Petitioner filed a mandamus action in the Ohio Eighth District Court of Appeals. *Frett v. State*, Nos. 100241, 100304, 2013 WL 6575935 (Ohio App. 8 Dist. Dec. 10, 2013). The Court of Appeals indicated Petitioner did not clarify the relief he sought in mandamus but surmised that the action "may [be based on] rulings on

motions for resentencing that he filed on February 19, 2013, in the three underlying cases, *State v. Frett*, Cuyahoga C.P. Nos. CR-543131, CR-544745, and CR-552762; and/or a new sentencing and/or a new trial for failure to comply with R.C. 2945.05, the jury waiver statute, for failure to be present at the resentencing, or some other irregularity during the course of the proceedings." *Id.* at *1. The Court of Appeals dismissed the action because it was improperly captioned, and because it did not contain an Affidavit. *Id.* at *2-3.

In addition, the Court of Appeals went on to state:

> To the extent that Frett is seeking rulings on the motions for resentencing that he filed in each of the three underlying cases, this matter is moot. Attached to the respondent's motions for summary judgment are certified copies of September 16, 2013 journal entries denying Frett's motions for resentencing in each of the three underlying cases. These attachments establish that the trial court has fulfilled its duty to rule on the subject motions.
>
> To the extent that Frett is endeavoring to challenge his convictions and sentences for lack of jurisdiction because the trial court did not comply with R.C. 2945.05, which requires a written waiver of jury trial, his claim is meritless. The Supreme Court of Ohio in *Martin v. Maxwell*, 175 Ohio St. 147, 147, 191 N.E.2d 838 (1963), rejected this argument for defendants, such as Frett, who pled guilty. The court ruled that the mandates of R.C. 2945.05, requiring a written jury waiver, are not applicable when the accused pleads guilty. 'The failure in such an instance to file a waiver does not deprive an accused of any of his constitutional rights, nor does it deprive the court of its jurisdiction.' This court followed *Martin in State v. Abney*, 8th Dist. Cuyahoga No. 84190, 2006-Ohio-273.
>
> To the extent that Frett is seeking a new sentence because the trial court improperly imposed consecutive sentences under R.C. 2929.19, he has or had an adequate remedy at law through appeal that now precludes an extraordinary writ. *State ex rel. Jaffal v. Calabrese*, 105 Ohio St.3d 440, 2005-Ohio-2591, 828 N.E.2d 107

Mandamus relief was denied on December 10, 2013. Petitioner did not appeal that decision to the Ohio Supreme Court.

### D. POST-JUDGMENT MOTIONS

In addition, Petitioner indicates he filed three or four post-conviction motions in the Cuyahoga County Court of Common Pleas. It appears he filed a Motion for Resentencing on February 19, 2013. He states only that his Motion was denied "due to no affidavit." (Doc. No. 1 at 4). Petitioner states he filed a post-conviction petition on February 13, 2013, in which he asserted claims of ineffective assistance of counsel, allied offenses of similar import, "constitutional and structural errors," speedy trial violations, denial of due process, and insufficient evidence to support his conviction. (Doc. No. 1 at 5). These Motions were denied on September 13, 2013. He did not appeal these decisions.

### E. MOTION FOR DELAYED DIRECT APPEAL

Petitioner indicates he still has an appeal pending in the Ohio Eighth District Court of Appeals. The Court of Appeals docket; however, does not reflect an active appeal by Petitioner. He appears to have filed a Motion for Delayed Direct Appeal on October 22, 2013. *See State of Ohio v. Frett*, No. CA-13-100549 (Ohio App. 8 Dist. filed Oct. 22, 2013). On his Notice of Appeal filed with the Motion, he stated he is appealing the judgment of the Court of Appeals on July 26, 2012. He states he was attempting "to get the higher court to vacate the conviction for lack of subject matter jurisdiction and make them aware of the lower court's failure to carry out a direct mandate." (Doc. No. 1 at 13). The Court of Appeals denied the Motion and dismissed the appeal *sua sponte* on November 4, 2013.

### HABEAS PETITION

Petitioner has now filed this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 asserting four grounds for relief:

> 1. Per se violation of Crim. R. 11(E)(1) in making a deal;
> 2. The Petitioner is seeking relief from conviction because trial court failure to comply with higher courts;
> 3. The Petitioner is seeking acquittal of conviction and the Judge screened for biasness and malicious prosecution;
> 4. The Petitioner is seeking a VOID conviction for lack of subject matter jurisdiction.

(Pet., Doc. No. 1 at 6-11). In support of his first ground, he claims that the trial court prejudicially deprived him of his Fourteenth Amendment rights by negotiating a plea without subject matter jurisdiction to direct a plea bargain agreement. He also contends the trial court breached the plea agreement by "taking away probation offered in the deal that Petitioner was appealed by." (Doc. No. 1 at 6). In support of his second ground for relief, Petitioner claims the trial court exceeded its authority by issuing his new sentence with a *nunc pro tunc* order when the Court of Appeals vacated his sentence and remanded the action to the trial court. Petitioner asserts the trial court should have conducted a new sentencing hearing. With regard to his third ground for relief, he states only that he "has been prejudicially deprived of his actual innocence and Fourteenth Amendment of his Due Process rights." (Pet., Doc. No. 1 at 9). Finally, to support his fourth ground for relief, he repeats his statement in support of his third ground for relief, and adds that no offense or any element of an actual rape offense or rape kit test of an offense took place in Ohio for the trial court to obtain subject matter jurisdiction. (Pet., Doc. No. 1 at 11).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996, and applies to habeas corpus petitions filed after that effective date. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles

of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). Consistent with this goal, when reviewing an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. *Wilkins v. Timmerman-Cooper*, 512 F.3d 768, 774-76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court, therefore, may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774 -76 (6th Cir. 2008).

A decision is contrary to clearly established law under §2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). In order to have an "unreasonable application of ... clearly established Federal law," the state-court decision must be "objectively unreasonable," not merely erroneous or incorrect. *Id.* at 409. Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Id.* at 415.

A state court's determination of fact will be unreasonable under §2254(d)(2) only if it represents a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). In other words, a state court's determination of facts is unreasonable if its finding conflicts with clear and convincing evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state-court decisions." *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). AEDPA essentially requires federal courts to leave a state court judgment alone unless the judgment in place

9

is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

## PROCEDURAL BARRIERS TO HABEAS REVIEW

Before a federal court will review the merits of a petition for a writ of habeas corpus, a petitioner must overcome several procedural hurdles. Specifically, the petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004). Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner*, 581 F.3d at 414. Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, courts should consider whether the Petitioner (1) phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) relied upon federal cases employing the constitutional analysis in question; (3) relied upon state cases employing the federal constitutional analysis in question; or (4) alleged "facts well within the mainstream of [the pertinent] constitutional law." *See Hicks v. Straub,* 377 F.3d 538, 553 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising

10

under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the claim must be presented to the state courts under the same legal theory in which it is later presented in federal court. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id.* This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim. *Wagner,* 581 F.3d at 414.

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address because the Petitioner did not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, the state judgment is not based on a resolution of federal constitutional law, but instead "rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir.1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state procedural ground for a state court decision absent a clear statement to the contrary. *See Coleman*, 501 U.S. at 735.

To determine if a claim is procedurally defaulted the court must determine whether: (1) there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) whether the state courts actually enforced the state procedural sanction; and (3) whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). A claim that is procedurally defaulted in state court will not be reviewed by a federal habeas court unless a petitioner can demonstrate cause for the default and

actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). If a petitioner fails to show cause for his procedural default, the Court need not address the issue of prejudice. *See Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

## ANALYSIS

Petitioner has not exhausted his state court remedies for any of the claims he asserts. He acknowledges that he did not assert his first, third and fourth grounds for relief in his direct appeal or in a post-conviction motion or petition. He indicates he attempted to raise his second ground for relief in his Motion for a Delayed Direct Appeal to the Ohio Eighth District Court of Appeals, but that Motion was dismissed *sua sponte* on November 4, 2013. Petitioner was unaware that his Motion had been denied, and did not appeal that decision to the Ohio Supreme Court. He therefore did not exhaust his state court remedies with respect to each of his grounds for relief.

Even if Petitioner had raised these grounds in some form in his direct appeal, he would not have exhausted his state court remedies. He did not file a timely appeal of the Eighth District Court of Appeals decision to the Ohio Supreme Court. Instead, he filed a Motion for Delayed Appeal nearly a year after the Court of Appeals affirmed his conviction. The Ohio Supreme Court denied his Motion. In addition, the trial court altered his sentence in a *nunc pro tunc* order in October 2012 in accordance with the terms ordered by the Court of Appeals. Petitioner did not appeal his new

sentence or the manner in which it was issued. He filed several post-conviction motions but did not appeal the denial of those motions. He filed a mandamus action in the Eighth District Court of Appeals but did not appeal the denial of that decision to the Ohio Supreme Court. He attempted to file a second direct appeal in the Eighth District Court of Appeals, which he called a Motion for Delayed Direct Appeal, but that appeal was not based on an underlying decision in the trial court and was dismissed *sua sponte*. Even if he had asserted his habeas grounds in one of those filings, he would not have exhausted his state court remedies.

As explained above, a petitioner cannot obtain federal habeas relief unless he has completely exhausted his available state court remedies to the state's highest court. *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); 28 U.S.C. § 2254(b)(1)(A). The United States Supreme Court has emphasized that the "interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claim," since "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rhines v. Weber*, 544 U.S. 269, 273-74 (2005)(citations omitted). Accordingly, where a habeas petition contains unexhausted claims, there is a "strong presumption" in favor of requiring a petitioner to pursue his available state remedies. *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *see also O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (stating that "the Supreme Court has been quite clear that exhaustion is the preferred avenue and that exceptions are to be for narrow purposes only").

Nevertheless, a habeas court need not wait for a petitioner's claims to be exhausted if it determines that a return to state court would be futile. If a petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, and no avenue of relief remains open, or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as procedurally defaulted. *See*

13

*O'Sullivan*, 526 U.S. at 847-48; *Harris v. Reed*, 489 U.S. 255, 260–62 (1989); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

Petitioner has no apparent remedies available in state court.  He already filed a direct appeal and did not assert these claims.  Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, *res judicata* bars their litigation in subsequent state proceedings.  *See State v. Perry*, 10 Ohio St.2d 175, 180 (1967).  He filed post-conviction motions, which were denied, and he did not appeal the denial of those motions.  There is no remedy that Petitioner has not attempted which is potentially still available to him in state court in which he can assert these claims.  They are procedurally defaulted.

When a claim is procedurally defaulted, federal habeas review is barred unless the Petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Petitioner can overcome a procedural default by showing (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Hutchison v. Bell*, 303 F.3d 720, 735 (6th Cir. 2002); *Combs v. Coyle*, 205 F.3d 269, 274-75 (6th Cir. 2000).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 484 (1986).  "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'"  *Hargrave–Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)).  To establish prejudice, Petitioner must demonstrate that the

14

constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

The Petition does not suggest any factor external to the defense precluded him from raising these claims in his first appeal of his conviction. He was represented by counsel in the filing of that appeal and obtained relief on one of his assignments of error. He contends he did not raise his claims in his appeal because he was unaware of these claims at the time of his appeal. His claims, however, challenge the court's failure to impose probation, the trial judge's impartiality, and the court's jurisdiction based on the location of the crime. Petitioner was aware or should have been aware of these facts supporting these claims at the time of sentencing. He also claims he is a *pro se* litigant and did not have assistance after his direct appeal. While this may be true, he does not suggest any factors external to the defense prevented him from raising these claims in his first appeal. He has not demonstrated "cause" for the default.

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 495-96). None of his claims pertain to his innocence. His first two claims concern his sentence. His fourth claim challenges the trial court's jurisdiction on the assertion that the rapes took place some place other than Ohio. His third claim, although stating that he was deprived of his actual innocence focuses on the trial judge's impartiality in the pre-trial phases, at the change of plea hearing and at sentencing. There is no suggestion that a fundamental miscarriage of justice occurred as a result of Petitioner's procedural default. Accordingly, Petitioner's grounds for relief cannot be reviewed in habeas corpus.

## CONCLUSION

For all the foregoing reasons, Petitioner's Application to Proceed *In Forma Pauperis* (ECF #2) is granted, the Petition (ECF #1) is denied and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed.R.App.P. 22(b).  So Ordered.

                                              s/Jeffrey J. Helmick
                                              United States District Judge